IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs.                       ) | Criminal No. 03-83 |
| ) | See Civil Action No. 04-1412 |
| JONATHAN L. SUMMERS,       ) | |
| ) | |
| Defendant.     ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant has been charged with two counts of possession with the intent to distribute and distribution of 5 grams or more of cocaine base, in the form commonly known as crack, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).

In response to Defendant's Motion to Vacate, filed on September 14, 2004, this Court held an evidentiary hearing on this matter. After having received the evidence presented at that hearing, the Court makes and enters the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1.   Defendant was charged in the Indictment in this case with two counts of possession with the intent to distribute and distribution of five grams or more of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).  (R.[1] 1).

---

1. "R." refers to the documents contained in the file of record in this case.

2. Counsel for the Defendant at all relevant times was Ralph D. Karsh, Esquire ("Karsh").

3. Counsel for the Government at all relevant times was Assistant United States Attorney Michael A. Comber ("Comber").

4. Prior to the Pretrial Conference scheduled in this matter for June 5, 2003, Karsh and Comber engaged in discussions regarding a possible plea negotiation. (T.[2] 5).

5. During these discussions, Comber informed Karsh that if the Defendant would plead guilty and stipulate to 150 grams of crack cocaine, the Government would not file an information pursuant to Title 21, United States Code, Section 851, stating previous convictions to be relied upon at sentencing. (T. 5).

6. Karsh determined that, if the Government filed a § 851 information, for which he knew Defendant was qualified, this would have greatly enhanced his sentence. (T. 5, 9).

7. Comber also informed Karsh that, if Defendant went to trial, there was a "plethora of historical information" which, if believed by the jury, would establish a drug quantity of well over the 150 grams and would, therefore, greatly affect Defendant's guideline determinations. (T. 5, 8).

8. Based upon the evidence of additional quantities of crack cocaine witnessed by the confidential informant during one

---

2. "T." refers to the transcript of the hearing on Defendant's Motion to Vacate held by this Court on Thursday, May 10, 2007.

of the hand-to-hand sales with Defendant, the effect of the Government filing a § 851 information in this case, the damaging historical evidence which could be presented at trial and the impact all of this could have on Defendant at sentencing, Karsh determined that accepting the Government's plea offer was in the best interest of his client. (T. 3-5, 8).

9. Explaining all of these factors to the Defendant, and informing him of everything he could face going to trial and pleading guilty, Karsh advocated to Defendant that accepting the Government's offer to plead guilty and stipulating to the 150 grams of crack cocaine was in his best interest. (T. 8, 10-11).

10. Karsh, while strongly advocating his position regarding why accepting this offer was in Defendant's best interest, never informed Defendant that he would withdraw as his counsel if he went to trial and did not accept the Government's offer. (T. 9-11).

11. On June 9, 2003, Defendant appeared in front of this Court and pled guilty to Count One of the Indictment filed in this case.

12. As part of the plea agreement entered into between Defendant and the Government, Defendant pled guilty to only Count One of the Indictment and stipulated to being responsible for 150 grams of crack cocaine. (R. 27).

13. On September 11, 2003, this Court sentenced Defendant to 150 months' imprisonment, which was the middle of the guideline range determined by the Court in its Tentative Findings and Rulings Concerning Disputed Facts or Factors. (R. 34).

14. Defendant did not appeal this sentence but rather, on September 14, 2004, filed the instant Motion to Vacate.[3] (R. 35).

### Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter herein. See 18 U.S.C. § 3231.

2. Proper venue lies in this Court. See Fed. R. Crim. P. 18.

3. Title 28, United States Code, Section 2255 permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence."

---

3. The Court notes that in his Motion to Vacate and his Reply to the Government's Response to his Motion to Vacate, Defendant vaguely argues that his counsel was ineffective for failing to file an appeal in this case after having been instructed to do so by Defendant. However, based upon the evidence presented at the evidentiary hearing held in this matter on May 10, 2007, Defendant seems to have abandoned this argument. To the extent that Defendant does not abandon this argument, the Court finds, based upon the lack of any evidence presented at the hearing regarding this issue, that this argument is without merit.

4. A petitioner seeking relief under Section 2255 on the grounds of ineffective assistance of counsel "must show both that: (1) counsel's representation fell below an objective standard of 'reasonableness under prevailing professional norms;' and (2) the defendant suffered prejudice as a result – that is, there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996)(citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).

5. In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Sistrunk, 96 F.3d at 670 (citing Strickland, 466 U.S. at 689-90) (internal quotation marks and citations omitted).

6. "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997).

7. The two-part test of Strickland "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 370.

8.   A defendant's guilty plea is valid if it is determined that the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill, 474 at 56.

9.   The Defendant must set forth specific acts or omissions which demonstrate that his counsel's performance fell below an objective standard of reasonableness, and must also show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Strickland, 466 U.S. at 690; Hill 474 at 59 (footnote omitted).

10.  While, as stated, there are two steps to the Court's analysis as to whether Petitioner's counsel was ineffective, a reviewing court need not consider both reasonableness and prejudice if one is sufficient to make a finding. Strickland, 466 U.S. at 697.

11.  Here, because the Court finds that Defendant has failed to establish that Karsh's representation fell below an objective standard of reasonableness under prevailing professional norms, it need not address the prejudice prong of the Strickland test.

12.  A Defendant convicted under Title 21, United States Code, Sections 841(a)(1) and (841)(b)(1)(B), is generally subject to a term of imprisonment of at least five (5) years and no more than forty (40) years and to a minimum term of supervised release

of four (4) years.  However, if it is determined that the Defendant committed such a violation after a prior conviction for a felony drug offense has become final, he is subject to a term of imprisonment of not less than ten (10) years and not more than life and a minimum term of supervised release of eight (8) years.

13.  In order for a Defendant to be subject to the increased penalty provision of § 841(b)(1)(B), by reason of one or more prior convictions, the Government must, before trial, or before entry of a plea of guilty, file an information with the Court, stating in writing the previous conviction(s) to be relied upon.  21 U.S.C. § 851.

14.  A determination of the sentencing guideline range for a defendant convicted of a drug offense relies heavily upon the quantity of drugs for which it has been established the defendant was responsible in committing the count(s) of conviction.  Essentially, the higher the quantity of drugs the higher the defendant's sentencing range will be.  See generally USSG § 2D1.1(c).

15.  Here, the only evidence set forth by Defendant at the hearing in this case was the testimony of Karsh who testified to the evidence surrounding the instant offense, such as the additional quantities of crack cocaine which the confidential informant witnessed during a hand-to-hand buy with Defendant.  (T. 3-4).

16.  Karsh also testified about his discussions with Comber, whom both he and this Court find to be a trustworthy and competent attorney, regarding a possible § 851 information which the Government would agree not to file if Defendant agreed to its plea offer, and additional historical evidence of previous drug deals involving Defendant which he would have to answer to if he proceeded to trial and which could greatly increase his potential penalties.  (T. 5, 7-8).

17.  As such, the evidence presented by Defendant demonstrated nothing except that Karsh took all of the information available to him, determined the possible consequences which Defendant would face if he went to trial, and if he accepted the deal put on the table by the Government and, based upon these determinations, counseled Defendant regarding his professional opinion that accepting the Government's plea deal was in his best interest.

18.  Based upon the facts of this particular case, the Defendant has failed to set forth, and the Court cannot find, any way in which Karsh's actions were anything but directly in line with what is to be expected from a professional criminal defense attorney.  <u>Hill,</u> 474 at 56.

19.  Therefore, the Court finds that Defendant has failed to establish that Karsh's actions in this case were constitutionally unreasonable, and finds that Defendant entered into the plea

agreement at issue, which included a stipulation to the 150 grams of crack cocaine relied upon by the Court for sentencing purposes, knowingly, voluntarily, intelligently and without any type of threats or coercion. Id. at 56-57; Heiser v.Ryan, 951 F.2d 559, 561 (3d Cir. 1991).

20. Defendant is not entitled to the relief he seeks pursuant to 28 U.S.C. § 2255.[4]

21. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial

---

4. The Court notes that, in his brief in support of his Motion, Defendant also argues that, because he was sentenced under the mandatory scheme of the Federal Sentencing Guidelines which took into consideration factors not admitted by Defendant or determined by a jury, his sentence violated his Sixth Amendment rights. Specifically, Defendant argues that the Supreme Court's application of Apprendi v. New Jersey, 530 U.S. 466 (2000) to the Washington State sentencing scheme in Blakely v. Washington, 542 U.S. 296 (2004), should be similarly extended to the Federal Sentencing Guidelines. See Defendant's Brief in Support of Motion to Vacate, pp. 3-10.

This exact argument has since been determined by the Supreme Court in United States v. Booker, 543 U.S. 220 (2005). Furthermore, the Third Circuit, in Lloyd v. United States, 407 F.3d 608 (3d Cir. 2005), has explained that it is Booker, and not Blakely, that applies to the Federal Sentencing guidelines. Lloyd, 407 at 611. Accordingly, it is Booker upon which Defendant's claim must rely. Unfortunately for Defendant, however, in Lloyd, the Third Circuit held that the rule of law announced in Booker did not retroactively apply to cases on collateral review. Specifically, the court held that Booker does not apply retroactively to motions under Section 2255 where the judgment was final as of January 12, 2005, the date Booker issued. Id. at 615-616. Since judgment in Defendant's case was final well before January 12, 2005, Booker does not apply to his case. Accordingly, there is no basis for relief on this ground.

showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2).

22. For the reasons set forth above, Defendant has not made a substantial showing of the denial of a constitutional right and, therefore, a certificate of appealability should not issue in this action.

_____
United States District Judge

Date: 5/31/07

ecf: Counsel of record

cc: Jonathon L. Summers, #07707-068
FCI McKean
Route 59 & Big Shanty Road
Lewis Run, PA 16738

Ralph Karsh, Esquire
Karsh & Associates
1031 Fifth Avenue
Pittsburgh, PA 15219